No. 22-1878

In the

# United States Court of Appeals

For the Fourth Circuit

Abrar Omeish,

*Plaintiff-Appellant,*

v.

Justun Patrick,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia

**REPLY BRIEF OF PLAINTIFF-APPELLANT
ABRAR OMEISH**

January 20, 2023

Lena F. Masri
Gadeir I. Abbas*
Justin Sadowsky
Hannah Mullen
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Plaintiff-Appellant*

*Gadeir I. Abbas licensed to practice in Virginia only. Practice limited to federal matters.

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………ii

TABLE OF AUTHORITIES…………………………………………….………iii

INTRODUCTION AND SUMMARY OF ARGUMENT…………………...1

ARGUMENT…………………………………………………………………..2

    I.    Patrick violated Omeish's Fourth Amendment rights by pepper spraying her in the face at point-blank range…..…….2

    II.    It was clearly established that pepper spraying Omeish in the face at point-blank range violated the Fourth Amendment……………………………………………………….6

        A. Patrick cannot factually distinguish Estate of Armstrong …………………………………………………………………7

        B. The competing legal authority Patrick offers is irrelevant………………………………………….…………..11

CONCLUSION……………………………………………………………….13

CERTIFICATE OF COMPLIANCE……………………………………….15

# TABLE OF AUTHORITIES

**Cases**

*Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001)……………………………………6
*Arizona v. Johnson*, 555 U.S. 323 (2009)…………………………………………13
*Carter v. Khan*, 2015 WL 6738607 (E.D. Va. Nov. 4, 2015)……………12
*Dean for and on behalf of Harkness v. McKinney*, 976 F.3d 407, (4th
       Cir. 2020)…………………………………………………………………………..…..6
*Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*,
       F.3d 892 (4th Cir. 2016)…………………………..1, 2, 3, 5, 7, 8, 9, 10, 11
*Graham v. Connor*, 490 U.S. 386 (1989)……………………………………………2, 5
*Mecham v. Fraizer*, 500 F.3d 1200 (10th Cir. 2007)……………………….11
*Owens ex rel. Owens v. Lott*, 372 F.3d 267 (4th Cir. 2004)………………6
*Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001)………………………………….3
*Pennsylvania v. Mimms*, 434 U.S. 106 (1977)…………………………………13
*Rodriguez v. United States*, 575 U.S. 348 (2015)…………………………...13
*Russell v. Wright*, 916 F. Supp. 2d 629 (W.D. Va. 2013) ………………..12
*Smith v. Ray*, 781 F.3d 95 (4th Cir. 2015)…………………………….....2, 4, 7
*Thorpe v. Clarke*, 37 F.4th 926 (4th Cir. 2022)……………………...……6

**Statutes**

Va. Code § 46.2……………………………………………………………………………….4

## INTRODUCTION

In 2019, when Officer Patrick pepper sprayed Abrar Omeish in the face after pulling her over, it had already been three years since the Fourth Circuit's decision in *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th Cir. 2016). That decision provided clear guidance to people like Officer Patrick as to what the Fourth Amendment required of them. In it, the Fourth Circuit set out an individual's right to be free from the use of serious injurious force, like pepper spray, when she does not pose a physical threat.

Contrary to the district court's decision and Patrick's response brief, the record allows a factfinder to find a clearly established violation under *Armstrong*. When Officer Justun Patrick pulled her over, Abrar Omeish—a soon-to-be law student running for local office at the time— didn't understand what she had done wrong and, confused, she asked him questions. She never refused to produce her driver's license and registration. She never resisted arrest. When Patrick reached inside her car to roughly grab her arm, she offered to hand him her driver's license at least sixteen times in one minute.

1

But Patrick nonetheless pepper sprayed her directly in the face at point-blank range. Inflicted as Omeish—panicked and frightened—attempted to peacefully deescalate the situation, Patrick's violence has been clearly prohibited by the Fourth Amendment since at least 2016. This Court should reverse.

## ARGUMENT

### I. Patrick violated Omeish's Fourth Amendment rights by pepper spraying her in the face at point-blank range.

The parties agree that, under the Fourth Amendment, determining the objective reasonableness of an officer's use of force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see* Opening Br. 15-16; Response Br. 23-24.

As Patrick recognizes (at 23), in evaluating "whether the totality of the circumstances justifies a particular sort of seizure," *Smith*, 781 F.3d at 101 (cleaned up), this Court is guided by three factors initially set out by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). *See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d

2

892, 899 (4th Cir. 2016). "First, we look to the severity of the crime at issue; second, we examine the extent to which the suspect poses an immediate threat to the safety of the officers or others; and third, we consider whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Estate of Armstrong*, 810 F.3d at 899 (quoting *Graham*, 490 U.S. at 396) (cleaned up). This Court has also articulated a straightforward rule for the use of "serious injurious force" like tasers and pepper spray: It is reasonable only "when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of force." *Id.* at 905; *see id.* (relying on *Park v. Shiflett*, 250 F.3d 843, 848-49, 852 (4th Cir. 2001), a case about the use of pepper spray, to analyze the defendant's "similar[]" use of a taser).

Patrick doesn't put up much of a fight on the *Graham* factors. Indeed, he declines to apply them at all. Nowhere does Patrick refute the opening brief's conclusion that all three weigh in Omeish's favor. *Compare* Response Br. 24-25 *with* Opening Br. 17-19.

As relevant to the first factor, Patrick points out (at 24) that Omeish "violated the law" by failing to stop before turning right on red, a "traffic

3

infraction punishable by a fine of no more than $350." Va. Code § 46.2-833. *See id.* § 46.2-835; JA 043. But he wisely does not attempt to argue that such a minor violation "would give an officer any reason to believe that [Omeish] was a potentially dangerous individual." *Smith*, 781 F.3d at 102; *see* Opening Br. 17-18.

Nor does Patrick offer relevant responses to Omeish's arguments on the second and third factors. In terms of a potential threat to Patrick's safety, Patrick does not deny—or even acknowledge—his size advantage over Omeish, that he had no reason to believe that she was armed, that her hands were easily accounted for, and that Patrick himself admitted that Omeish posed no threat to him. *Compare* Opening Br. 18-19 *with* Response Br. 24-25. Nor does he expressly argue that Omeish attempted to flee or evade arrest. *See* Response Br. 24-25.

Rather, Patrick (at 24-25) rests his Fourth Amendment argument on a series of factual assertions, most of which are inaccurate when the record is properly read in favor of Omeish. Contrary to Patrick's description, Omeish did not refuse to produce her license and registration, nor did she refuse to get out of her car. *See* JA 061 (Omeish "***never*** made any statements of refusal[,] as she just questioned PFC

4

Patrick [regarding] why she was stopped") (emphasis original); *see also* JA 063; Dashcam at 1:36-4:17. Omeish did not actively resist Patrick. *See* JA 058, 063-64; *see generally* Dashcam at 0:57-5:12. And she expressly offered to produce her driver's license at least sixteen times in one minute before Patrick pepper sprayed her in the face. *See* Dashcam 4:17-5:12.

Rather than accept Omeish's offers of compliance, Patrick pepper sprayed her in the face at point blank range. A factfinder could conclude that, given those offers of compliance and the other circumstances discussed above, Patrick's use of force did not address an "immediate danger that could be mitigated by the use of force"—particularly because Patrick's use of force increased, rather than decreased, the danger to him and Omeish by causing her to stumble, blinded, towards oncoming traffic. *Estate of Armstrong*, 810 F.3d at 905; *see* Opening Br 19.

In short, Patrick has no colorable argument in favor of the reasonableness of pepper spraying Omeish. Every *Graham* factor weighs against him, as Omeish had committed a minor traffic infraction, posed no physical threat to Patrick, and was not attempting to flee or evade arrest. Moreover, under *Estate of Armstrong*, as discussed below in Part II, an objective officer would not have concluded that the circumstances

5

presented a risk of immediate danger that could be mitigated by the use of pepper spray.

## II. It was clearly established that pepper spraying Omeish in the face at point-blank range violated the Fourth Amendment.

"Qualified immunity fundamentally concerns itself with 'fair notice.'" *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). For the law to be clearly established, "the very action in question" need not have been previously held unlawful, as long as "the unlawfulness of the official's conduct [is] apparent" "in light of pre-existing law." *Dean for and on behalf of Harkness v. McKinney*, 976 F.3d 407, 417 (4th Cir. 2020) (cleaned up). *See also Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004); *Amaechi v. West*, 237 F.3d 356, 362 (4th Cir. 2001) ("[T]he exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established.").

*Estate of Armstrong* clearly established that Patrick acted unlawfully. There, this Court held that an officer "may ***only*** use serious injurious force" like a taser or pepper spray "when an objectively reasonable officer would conclude that the circumstances present a risk

6

of immediate danger that could be mitigated by the use of force." *Estate of Armstrong*, 810 F.3d at 905 (emphasis original). That crystal-clear rule provided more than enough notice to a reasonable officer in Patrick's position that pepper spraying Omeish—who was sitting in her car, politely asking questions, not refusing Patrick's orders or physically resisting, and posing no physical threat to Patrick—violated the Fourth Amendment. *See* Opening Br. 23.

### A. Patrick cannot factually distinguish *Estate of Armstrong*.

*Estate of Armstrong* clearly established Omeish's right, as a non-threatening passive resister, not to be subject to the use of serious injurious force. Patrick's attempts to wriggle out from under that clearly-established rule are unsuccessful.

First, Patrick observes (at 18-19) that "Omeish had violated a traffic law" by driving "through a red light without stopping," whereas the plaintiff in *Estate of Armstrong* had committed no crime. This gets him nowhere because a minor traffic infraction would not "give an officer any reason to believe that [Omeish] was a potentially dangerous individual." *Smith*, 781 F.3d at 102; *see Estate of Armstrong*, 810 F.3d at

7

899-901. Like in *Estate of Armstrong*, a reasonable officer would not have expected Omeish to be a threat to him.

Second, Patrick claims (at 18-21) that Omeish "refus[ed] to follow the officer's instructions," "refuse[d] to show her license," "refuse[d] to get out of the car," and "actively resist[ed]" him. As already discussed above, that is untrue. *See* JA 058, 061, 063-64; *see generally* Dashcam at 0:57-5:12. Patrick also disregards Omeish's sixteen offers to provide her driver's license, suggesting that "Officer Patrick had no reason to believe" them. Response Br. 21. Not so. The record contains ample evidence that Omeish was sincerely offering to comply with his orders. *See* Dashcam at 4:17-5:12 ("I'll give you my license!"); JA 060 (discussing "the many statements of compliance by the driver"); *id.* at 062 ("[Y]ou can clearly hear Ms. Omeish make statements that she would give him her license.").

In any event, even if Omeish was actively resistant and did refuse to comply with orders, *Estate of Armstrong* still clearly forbids Patrick's use of pepper spray. The plaintiff in *Estate of Armstrong* was "unrestrained and actively resisting" officers by holding onto a post and refusing to submit to an arrest. 810 F.3d at 903; *see id.* at 897. As this Court explained, serious uses of force like tasers and pepper spray are

8

reasonable only in response to a proportional threat to the officer's safety; that rule "does not countenance use in situations where an unrestrained arrestee, though resistant, presents no serious safety threat." *Id.* at 904. "Even noncompliance with police directives and nonviolent physical resistance do not necessarily create a continuing threat to the officers' safety." *Id.* (internal quotation marks removed).

For example, *Estate of Armstrong* approvingly discussed a Ninth Circuit en banc case, in which a reasonable factfinder could find the use of a taser unreasonable against an active resister who refused to get out of her car, stiffened her body, and clutched her steering wheel "to frustrate the officers' efforts to remove her from her car" when she did not evade arrest by flight and no other exigent circumstances existed. *Id.* (citing *Mattos v. Agarano*, 661 F.3d 433, 446 (9th Cir. 2011) (en banc)). Here, Patrick himself admitted that Omeish—regardless of whether she actively resisted him—posed "no threat to me." JA 064; *see also* 060 ("[T]he investigation does not provide any supporting evidence … that PFC Patrick was in a state of imminent harm."). This Court "declin[es] to equate conduct that a police officer characterized as resistance with an

9

objective threat to safety entitling the officer to escalate force." *Estate of Armstrong*, 810 F.3d at 905.

Third, Patrick observes (at 18) that *Estate of Armstrong* did not "involve the use of pepper spray." True, but irrelevant. *Estate of Armstrong* instructs that pepper spray and taser use are both "serious injurious force," relies on a case involving pepper spray in its analysis, and expressly states that the two are "similar[]" for purposes of the Fourth Amendment analysis. 810 F.3d at 905.

Fourth, Patrick points out (at 19) that Omeish was pepper sprayed in the face at point-blank range only once, while the plaintiff in *Estate of Armstrong* was tased five times in two minutes. But pepper spraying somebody in the face at point-blank range—which "causes closing of the eyes through swelling of the eyelids, immediate respiratory inflammation, and immediate burning sensations"—is undoubtedly a use of "serious injurious force" that falls in the heartland of *Estate of Armstrong*. *See id.* at 905 (cleaned up). Patrick does not contend otherwise.

Finally, Patrick impugns (at 19-20) the motivation behind Omeish's questions, claiming that Omeish "feign[ed] ignorance as to why she was

10

pulled over and her legal obligation to produce her license and registration." But Omeish explained that she was frightened, overwhelmed, and seeking an explanation for his actions. *See* Opening Br. 6; JA 156, 190. In any event, the Fourth Amendment examines the objective reasonability of an officer's actions, not the subjective motivations of a plaintiff's reaction to them.

### B. The competing legal authority Patrick offers is irrelevant.

Patrick argues that three cases are more analogous than *Estate of Armstrong* to the facts presented. He is wrong.

Patrick looks (at 21-22) to *Mecham v. Fraizer*, 500 F.3d 1200 (10th Cir. 2007), where the Tenth Circuit held it objectively reasonable for an officer to use pepper spray to "subdue and remove an uncooperative and unresponsive, belligerent traffic violator from the car she still controlled." *Id.* at 1206. But while Omeish was not immediately complying with Patrick's instructions, she was politely asking questions and trying to understand her situation—and then expressly offered him compliance sixteen times before he pepper sprayed her. *See* JA 058, 061, 063-64; *see generally* Dashcam at 0:57-5:12. In *Mecham*, in comparison, the plaintiff refused to comply with any instructions for over 15 minutes, during

11

which the officer had to call both backup and a tow truck. 500 F.3d at 1202-03.

*Carter v. Khan*, 2015 WL 6738607 (E.D. Va. Nov. 4, 2015) and *Russell v. Wright*, 916 F. Supp. 2d 629 (W.D. Va. 2013) are even further afield. *See* Response Br. 16-17. In both cases, the officer used force after reasonably perceiving an imminent risk of physical harm from the plaintiff. *Carter* concerned a plaintiff who had "admittedly refused at least two orders to return to his truck," exhibited "tense" and "frustrated" body language, "remained defiant" of the officer's authority, and then moved to return to his truck, where the officer "reasonably feared that [he] might retrieve a weapon or flee the scene." *Carter*, 2015 WL 6738607, at *11; *id.* at *8. *Russell*, similarly, addressed an officer using force when he responded to a report of a serious act of violence and the plaintiff, who the officer had reason to believe posed a physical danger to him, actively resisted arrest. *Russell*, 916 F. Supp. 2d at 641, 643. Without recounting the relevant facts *ad nauseum*, that is simply not what happened here.

Finally, like the district court, Patrick relies (at 14-15) on language from Supreme Court cases that point out that traffic stops may be dangerous. As already explained in the opening brief, none of the cited

12

cases analyzed the reasonability of an officer's use of force. *See* Opening Br. 28-29. They certainly do not stand for the proposition that an officer receives extra leeway in the excessive-force analysis when he uses force on the side of the road. *See Arizona v. Johnson*, 555 U.S. 323 (2009) (discussing the requirements for a lawful investigatory stop and patdown of a motorist in the traffic stop context); *Rodriguez v. United States*, 575 U.S. 348 (2015) (holding that, absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff is an unreasonable seizure); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (holding an officer's order for a driver to step out of his car during a lawful investigatory stop to be reasonable).

## CONCLUSION

This Court should reverse the district court's grant of summary judgment and remand for further proceedings.

13

14

          Respectfully submitted,

Date: January 20, 2023      /s/ Lena F. Masri
Lena F. Masri
Gadeir I. Abbas*
Justin Sadowsky
Hannah Mullen
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave. SE
Washington, DC 20003
(202) 742-6420

*Counsel for Plaintiff-Appellant*

*Gadeir I. Abbas licensed to practice in Virginia only. Practice limited to federal matters.*

## CERTIFICATE OF COMPLIANCE

This document complies with type-volume limits of Fed. R. App. R. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this brief contains 3,024 words.

This complies with the typeface and type style requirements because this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Lena F. Masri
Lena F. Masri